

# NUMBER 13-13-00507-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellant,** |

**v.**

| | |
|---|---|
| **JOSE RUIZ,** | **Appellee.** |

### On appeal from the 25th District Court
### of Gonzales County, Texas.

# OPINION ON REMAND

### Before Justices Benavides, Longoria, and Tijerina
### Opinion on Remand by Justice Benavides

This case is before this Court for a third time. *See State v. Ruiz*, 545 S.W.3d 687, 690 (Tex. App.—Corpus Christi–Edinburg 2018), *affirmed in part, vacated and remanded in part by* 581 S.W.3d 782, 784 (Tex. Crim. App. 2019).

In its opinion, the Texas Court of Criminal Appeals stated that while our 2018 decision remained pending on its docket, the United States Supreme Court analyzed the

issue of exigent circumstances in the context of suppressing blood evidence obtained pursuant to a warrantless draw. *See Mitchell v. Wisconsin*, ___ U.S. ___, 139 S. Ct. 2525, 204 L.Ed.2d 1040 (2019). Thus, the court of criminal appeals vacated that portion of our previous opinion and remanded this case for further analysis in light of that opinion. *See Ruiz*, 581 S.W.3d at 784. Additionally, the court of criminal appeals analyzed the State's first issue regarding Ruiz's challenge to the implied consent provision in the transportation code and held that "implied consent is not a valid basis for a blood draw in the circumstances presented here" and affirmed our previous decision as to issue one only. *See id.*

Following the court of criminal appeals' mandate, we issue this new opinion today re-analyzing issue two of the State's appeal challenging the trial court's granting of appellee Jose Ruiz's motion to suppress. We reverse and remand.

## I. BACKGROUND

At approximately midnight on September 9, 2012, Gonzales Police Sergeant Bethany McBride responded to an automobile collision between a Lincoln and a Pontiac at the intersection of 90A and Robertson in Gonzales, Texas. The driver of the Pontiac remained at the scene and advised Sergeant McBride that the driver of the Lincoln—later identified as Ruiz—had fled the scene of the crash and run behind a car wash in the area. Other witnesses at the scene relayed the same information to Sergeant McBride.

Upon closer inspection of the Lincoln, Sergeant McBride observed several exploded Bud Light beer cans in the front seat and found insurance paperwork in Ruiz's name. Sergeant McBride also confirmed that the vehicle was registered to Ruiz. Once

Sergeant McBride's backup officer[1] arrived at the scene, she advised the backup officer that Ruiz had fled behind the car wash on Apache Loop. Sergeant McBride also testified that at that point "we had county officers and my backup officer try to locate [Ruiz]." The officers eventually located Ruiz lying unconscious in "the exact location" that witnesses had described and carried him to a patrol unit.

Sergeant McBride testified that once Ruiz was located, "it took several officers to get [Ruiz] from the field to carry him to the patrol unit." Sergeant McBride described Ruiz as "unresponsive," that he "couldn't open his eyes" and "wouldn't respond" to the officers. She further recalled that Ruiz had a "strong odor of alcoholic beverage" emitting from his person and also had "no apparent injuries" to his body. Emergency medical service (EMS) personnel arrived at the scene and performed several sternum rubs on Ruiz but found him to be unresponsive. At that point, EMS transported Ruiz to the hospital, where he remained unconscious throughout the night.

Sergeant McBride testified that after "a period of time" she traveled to the hospital in order to "make sure that he was cleared medically and to have blood drawn." She eventually placed Ruiz under arrest and then gathered and filled out paperwork to order hospital personnel to perform a blood draw. Once the blood was drawn, Sergeant McBride took custody of the blood sample and "put it in the icebox at the Gonzales Police Department to be sent to [the] lab." While Ruiz was already in custody, doctors at the hospital told Sergeant McBride that they wanted to keep Ruiz hospitalized overnight "due to his condition." Sergeant McBride testified that she had no concern that he would flee

---

[1] The backup officer's name is unclear from the record.

from the hospital or destroy any evidence.

On cross-examination, when asked by Ruiz's attorney whether it would have been reasonable to obtain a warrant to draw Ruiz's blood that night, Sergeant McBride said no. When asked why, Sergeant McBride responded: "that night [with] two officers on [duty], to take one off [duty to obtain a warrant], no [it would not have been feasible]." Furthermore, she estimated that it would have taken "probably about two or three hours" to get a warrant that night. Additionally, Sergeant McBride stated that she based her decision to draw Ruiz's blood on § 724.012 of the transportation code.[2] (referring to the section that authorized the taking of a breath or blood specimen in an intoxication arrest).

On re-direct, Sergeant McBride testified that her investigation of Ruiz's crash took "longer" than a general traffic stop. Furthermore, she testified that no procedures were in place at the time within the Gonzales Police Department to obtain search warrants for blood evidence. And lastly, Sergeant McBride stated that it would have been "difficult" to find a judge to sign a warrant that night, and if she had found a judge, she would have had to drive to that judge's house to obtain the appropriate signature.

After the hearing, the trial court granted Ruiz's motion to suppress[3] and issued the

---

[2] During questioning, Ruiz's counsel referred to § 724.012 of the "penal code." The penal code does not contain a § 724.012. However, in closing arguments, the State directed the trial court's attention to § 724.012 of the *transportation code* in support of its argument to perform a warrantless blood draw pursuant to the implied consent statutory scheme. *See* TEX. TRANSP. CODE ANN. § 724.012. We treat all references to chapter 724 of the penal code rather than the transportation code in this record as inadvertent errors.

[3] We note here that the hearing on Ruiz's motion took place in August 2013, which was six years prior to the Supreme Court's opinion in *Mitchell v. Wisconsin*, ___ U.S. ___, 139 S. Ct. 2525, 204 L.Ed.2d 1040 (2019), in which the Supreme Court held that the exigent circumstances exception to the Fourth Amendment almost always permits a blood test without a warrant where the driver was suspected of drunk driving and unconscious. Whereas *Mitchell* has served as the basis for subsequent challenges to a warrantless blood draw of an unconscious person, we observe that, because that opinion had not yet been issued at the time of appellant's trial proceedings, the parties and trial court did not have the benefit of the

following relevant findings of fact and conclusions of law:

**Findings of Fact**

1. [Ruiz] was involved in an accident late at night to early morning on September 9, 2013. Gonzales Police Department Sgt. Bethany McBride responded.

2. [Ruiz] became unconscious and was carried and placed in McBride's patrol vehicle.

. . . .

4. Following [Ruiz's] arrest by McBride the attending physicians indicated they wanted to keep [Ruiz] overnight.

5. There was no concern that [Ruiz] would flee from the hospital.

6. A warrant could have been obtained within 2 to 3 hours.

. . . .

8. McBride performed a criminal history check on [Ruiz] and found four previous convictions for DWI. Relying on Texas [Transportation] Code 724.012 and 724.014 McBride ordered the blood draw from [Ruiz].[4]

9. [Ruiz] remained in custodial arrest during the time the blood was drawn.

10. The court finds [Sergeant] McBride's testimony to be credible in all respects.

**Conclusions of Law**

1. The court takes judicial notice of all statutes promulgated under [the] Texas Transportation Code and in effect during all times relevant to this case.

2. The court finds that it is bound by *Missouri v. McNeely*, [569 U.S. 141] 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013).

Supreme Court's decision when making its arguments or rulings.

[4] Similar to our comment in footnote 2, it appears that the trial court inadvertently referred to §§ 724.012 and 724.014 of the penal code in its findings rather than §§ 724.012 and 724.014 of the transportation code.

3. [Ruiz] did not revoke his consent to a blood draw under section 724.011 of the Texas Transportation Code.

4. No exigent circumstances existed in this case.

5. Believing itself to be bound by *McNeely*, the court granted the motion to suppress.

6. If exigent circumstances existed the court believes *McNeely* would not apply and the motion to suppress would be denied.

This appeal followed.

## II.    MOTION TO SUPPRESS

The sole issue we have been tasked to address is whether exigent circumstances, as presented in this case, allowed Ruiz's warrantless blood draw.

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *State v. Arellano*, 600 S.W.3d 53, 57–58 (Tex. Crim. App. 2020); *Weems v. State,* 493 S.W.3d 574, 577 (Tex. Crim. App. 2016). We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). We review de novo a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *Id.* The trial court's ruling will be sustained if it is correct on any applicable theory of law and the record reasonably supports it. *Ruiz*, 581 S.W.3d at 785.

6

**B. Applicable Law**

The court of criminal appeals has requested that this Court evaluate the State's second issue in light of the recent United States Supreme Court ruling in *Mitchell*. *See* 139 S. Ct. at 2531. In *Mitchell*, the Supreme Court held that "in a narrow but important category of cases: those in which the driver is unconscious and therefore cannot be given a breath test," "the exigent-circumstances rule almost always permits a blood test without a warrant." *Id*. "Thus, when a driver is unconscious, the general rule is that a warrant is not needed." *Id*.

The Fourth Amendment guards the "right of the people to be secure in their persons . . . against unreasonable searches" and provides that "no Warrants shall issue, but upon probable cause." *Id*. at 2534. A warrantless search is per se unreasonable unless it falls within a well-recognized exception to the warrant requirement. *Weems*, 493 S.W.3d at 578; *see Mitchell*, 139 S. Ct. at 2534; *see also Katz v. United States*, 389 U.S. 347, 357 (1967). The exceptions to the warrant requirement include the exigent-circumstances exception. *Weems*, 493 S.W.3d at 578. "Under the exception for exigent circumstances, a warrantless search is allowed when 'there is a compelling need for official action and no time to secure a warrant.'" *Mitchell,* 139 S. Ct. at 2534 (quoting *Missouri v. McNeely*, 569 U.S. 141, 149 (2013)).

The exigency exception operates "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Weems*, 493 S.W.3d at 578 (quoting *McNeely*, 569 U.S. at 148–49; *Kentucky v. King*, 563 U.S. 452, 460 (2011)). Whether law

7

enforcement faced an emergency that justifies acting without a warrant calls for a case-by-case determination based on the totality of the circumstances. *Id.* An exigency analysis requires an objective evaluation of the facts reasonably available to the officer at the time of the search. *Id.* at 579.

"Exigency exists when (1) [blood alcohol content] (BAC) evidence is dissipating and (2) some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application." *Mitchell,* 139 S. Ct. at 2537. "Both conditions are met when a drunk-driving suspect is unconscious, so *Schmerber* controls: With such suspects, too, a warrantless blood draw is lawful." *Id.* (referencing *Schmerber v. California*, 384 U.S. 757, 765 (1966)). The combination of an automobile accident as well as an unconscious driver would lead an officer to "reasonably have believed that [she] was confronted with an emergency." *Id.* at 2538; *Schmerber*, 384 U.S. at 770.

## C.     Discussion

As our previous memorandum opinion stated, the record undisputedly shows that Ruiz was involved in a car crash, fled the scene, and was found unconscious in a nearby field. Ruiz remained unconscious for the remainder of the night. Further, Ruiz's unconsciousness required that he be carried by "several officers" from the field where he was found to one of the officer's patrol units. EMS personnel unsuccessfully attempted several times to wake him by performing sternum rubs. Moreover, once at the hospital, physicians wanted to keep Ruiz hospitalized overnight "due to his condition." Sergeant McBride testified that she had no concern that Ruiz would flee from custody that night and "didn't think [Ruiz] was going anywhere."

8

The record also shows that no procedures were in place for Gonzales police officers to obtain search warrants for blood from drunkdriving suspects at the time of this accident in 2012. Despite the lack of procedures in place, Sergeant McBride agreed that it would "have been difficult to find a judge" to sign a warrant at that time of day on an early Sunday morning, but even if she had found a judge, she would have had to have driven the warrant to the judge's house. According to Sergeant McBride, she estimated that it would have taken "two or three hours" to obtain a warrant that night. Sergeant McBride further testified that it would have been unreasonable that night to obtain a warrant—even if it took two hours to complete—because "[b]eing that, that night two officers on, to take one off, no." Without further elaboration from Sergeant McBride, however, we construe this testimony as follows: there was only two officers on duty that night, and Sergeant McBride did not want to remove one of the two officers, including herself, away from their police duties in order to obtain a warrant that would take over two hours to procure. *See Mitchell,* 139 S. Ct. at 2537; *see also Matthews v. State*, No. 05-18-01267-CR, 2019 WL 5690715, *8 (Tex. App.—Dallas Nov. 4, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding that the totality of the circumstances from a major automobile accident and unconscious driver showed the exigencies were "so compelling" that a warrantless search was objectively reasonable).

Although Sergeant McBride testified in a conclusory manner that taking one of the two officers off duty to apply for a blood warrant would have been "unreasonable" without much further elaboration, the facts here show that Sergeant McBride was dealing with an accident scene caused by Ruiz, as well as an unconscious Ruiz, with minimal assistance

9

available to her at that time. *Mitchell* held that in cases such this, where Sergeant McBride encountered both an accident scene and an unconscious driver,

> [i]t would force [law enforcement officers] to choose between prioritizing a warrant application, to the detriment of critical health and safety needs, and delaying the warrant application, and thus the BAC test, to the detriment of its evidentiary value and all the compelling interests served by BAC limits. This is just the kind of scenario for which the exigency rule was born—just the kind of grim dilemma it lives to dissolve.

139 S. Ct. at 2538. And even though warrants can be obtained faster and in an easier fashion,

> [w]arrants inevitably take some time for police officers or prosecutors to complete and for magistrate judges to review. Telephonic and electronic warrants may still require officers to follow time-consuming formalities designed to create an adequate record, such as preparing a duplicate warrant before calling the magistrate judge . . . . And improvements in communications technology do not guarantee that a magistrate judge will be available when an officer needs a warrant after making a late-night arrest.

*McNeely,* 569 U.S. at 155. Although we have previously stated that the State failed to establish exigency in this case, based on the recent caselaw from the United States Supreme Court, we now find that the circumstances presented by the State do establish exigency.

> When police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC without offending the Fourth Amendment.

*Mitchell*, 139 U.S. at 2539. We sustain the State's second issue.

### III. CONCLUSION

We reverse the trial court's ruling on Ruiz's motion to suppress and remand for proceedings consistent with this opinion.

GINA M. BENAVIDES
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
11th day of March, 2021.

11